**IN THE UNITED STATES DISTRICT COURT FOR
THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| BOLIVAR AND BEATRIZ URIARTE, | ) | Case No.: |
| | ) | |
| Plaintiffs, | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| v. | ) | |
| | ) | |
| DAVID KOCH and KOCH & ASSOCIATES, | ) | |
| PERSONAL CORPORATION, | ) | |
| | ) | |
| Defendants. | ) | |

**COMPLAINT FOR VIOLATION OF THE FAIR HOUSING ACT 42 U.S.C. §3601 *et seq*.;
VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U. S. C. §§ 1981, 1982;
VIOLATION OF THE ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS
PRACTICES ACT, 815 ILCS 505/2B.2; BREACH OF CONTRACT; AND BREACH OF
FIDUCIARY DUTY**

     Plaintiffs, Bolivar and Beatriz Uriarte (Mr. and Mrs. Uriarte), complaining of the
Defendants, David Koch (Defendant Koch) and Koch & Associates, Personal Corporation
(Defendant PC), collectively referred to herein as "Defendants," by their attorneys, Kelli Dudley
and Andrew Sidea of the Law Office of Kelli Dudley, as and for a Verified Complaint herein,
upon information and belief, and at all times hereinafter mentioned, allege as follows:

**INTRODUCTION**

1.    Defendant David Koch (Defendant Koch) is an attorney admitted to practice in the State
of Illinois. Through various advertisements, he holds himself out to defend mortgage foreclosure
actions on behalf of consumers like Mr. and Mrs. Uriarte. He advertises in Spanish, runs
television advertisements in Spanish, and advertises in publications directed to Spanish-speaking
consumers. Defendant Koch & Associates, Personal Corporation is an Illinois corporation of
which Defendant Koch is the President and through which he conducts the aforementioned acts.

2.     Mr. and Mrs. Uriarte hired Defendants to defend their home from foreclosure. Mr. and Mrs. Uriarte fell behind on mortgage payments, received paperwork indicating their property was subject to foreclosure, and responded to advertising by Defendants stating Defendants could help people stay in the home for years without making a mortgage payment.

**PARTIES, JURISDICTION AND VENUE**

3.     Mr. and Mrs. Uriarte reside in the county of Cook, state of Illinois.

4.     Defendant Koch is licensed to practice law in the state of Illinois and Defendant PC is a corporation registered with the Illinois Secretary of State. Defendants do business in Cicero, County of Cook, Illinois.

5.     On or about August 27, 2010, Defendant Koch  held himself out to the public in general, and to Mr. and Mrs. Uriarte in particular, as a duly-licensed attorney with offices located at 3615 West Twenty-sixth Street, Chicago, Illinois 60623 and 1308 South Fifty-seventh Avenue Cicero, Illinois 60804, County of Cook, State of Illinois.

6.     On or about August 27, 2010, Mr. and Mrs. Uriarte consulted with Defendants in Defendants' office with regard to a mortgage foreclosure proceeding related to Mr. and Mrs. Uriartes' property located at 3228 West Belle Plaine Avenue, Chicago, Illinois 60618.

7.     At all relevant times, Defendant Koch perpetrated his conduct below individually and/or by and through agents of Defendant PC, over whom Defendant Koch  personally exerted operational control concerning the facts at bar.

8.     This matter involves Federal statutes, including the Fair Housing Act and Civil Rights Act. This is an action for violation of 42 U.S.C. §3601 *et seq*. (Fair Housing Act), and 42 U. S. C. §§ 1981, 1982 (Civil Rights Act of 1866). This Court has original jurisdiction over this action pursuant to 28 U.S.C. §1331 (Federal question).

9.      Venue is proper in the Northern District of Illinois pursuant to 28 U.S.C. §1391 because each Defendant is an individual or corporation subject to personal jurisdiction this district.

## SUBSTANTIVE ALLEGATIONS

10.      Mr. and Mrs. Uriarte are first-generation immigrants to the United States of America; they speak Spanish and understand and speak little or no English. Their national origin is Ecuadorian.

11.      At all relevant times, Defendants provided service or purported to provide service in exchange for money to help Mr. and Mrs. Uriarte retain their home. This was a transaction directly related to Mr. and Mrs. Uriartes' ownership of and residence in housing.

12.      Mr. and Mrs. Uriarte were advised by Defendants that they had good and complete defenses to the mortgage foreclosure action on the merits.

13.      The scope and representation to be provided by Defendants to Mr. and Mrs. Uriarte was as follows, non-exhaustively, according to the retainer agreement attached to this complaint as **Exhibit A and B (two pages):**

    a.  legal advising regarding mortgage foreclosure;

    b.  legal advising of rights under rules to reinstate within three months of default;

    c.  legal advising of the right of redemption (the greater of seven months from the date of service or three months from date of judicial decision in residential foreclosure actions);

    d.  legal advising toward the client's right to be personally served with a summons and complaint and the right to object to personal jurisdiction if service is improper;

e.   legal advising conditioned on payment of $203 appearance fee by client before date required for appearance, which fee Mr. and Mrs. Uriarte did timely pay;

f.   counseling and  informing client regarding rights to possession of the property, including the possibility of extending possession after sale of property if a person who resides in the property over 18 years old was not properly made a party to and served with process in the mortgage foreclosure proceedings;

g.   keeping the client informed regarding status of the case by having meetings with the client to inform him/her regarding the case status; and

h.   representation of the client in the mortgage foreclosure case.

14.      On or about August 27, 2010, Defendants were retained by Mr. and Mrs. Uriarte, at which time Defendants requested and received Mr. and Mrs. Uriartes' signatures on a retainer agreement providing for representation set forth above. **Exhibit A and B**.

15.      As a result of the aforementioned, an attorney-client relationship was created between Mr. and Mrs. Uriarte and Defendants as of August 27, 2010, in which the Defendants were to represent Mr. and Mrs. Uriarte, in a mortgage foreclosure action, case 2009 CH 19116 in the Circuit Court of Cook County, Illinois.

16.      As a result of the aforementioned, Defendants owed Mr. and Mrs. Uriarte the fiduciary duties including, but not limited to, care, loyalty, and disclosure.

17.      As a result of the aforementioned attorney-client relationship, Defendants had a duty to represent Plaintiff, Mr. and Mrs. Uriarte, with the reasonable care, skill, and diligence as ordinarily possessed and exercised by other attorneys in the community.

18.     Rather than filing a Motion to Vacate a previously-entered judgment of foreclosure and sale, an interlocutory order in Illinois mortgage foreclosure law, Defendants filed an appearance and took no steps on behalf of Mr. and Mrs. Uriarte for approximately one year.

19.     After being hired, Defendants filed no Answer or other substantive pleadings for approximately one year.

20.     After being hired, Defendants did not inquire about service of process upon Mr. and Mrs. Uriarte until approximately one year later, when Defendant Koch allegedly determined they were properly served.

21.     Approximately one year after being hired, Defendants filed a Motion to Extend Time that was denied and an Answer that was meaningless since a judgment of foreclosure and sale had already been entered. No Motion to Vacate or Motion to Extend Time to Answer or Otherwise Plead was filed by Defendant.

22.     During the course of Defendants' representation of Mr. and Mrs. Uriarte Defendants rendered the following services from August 2010 through February 2012:

  a.  Entered an appearance on Plaintiffs, Mr. and Mrs. Uriartes', behalf on October 28, 2010;

  b.  Filed a Response to the Motion for Order Approving sale on August 29, 2011, which made the following statements, a copy of the Response to the Motion for Order Approving Sale is attached as **Exhibit C**:

    i.  "The Defendants are losing their only personal residence."

    ii. "The bid at the sale left no deficiency, so Defendant's [sic] do not object to the amount bid."

    iii. "This family is suffering tremendous anguish at the loss of their home."

    iv.  "Defendants throw themselves on the mercy of the court and seek only an extension of the stay on the order for possession."

c. Filed a motion to extend possession on or about November, 2011, after the Court issued an order for possession on October 11, 2011;

d. The motion to extend possession requested an additional 30 days of possession for Mr. and Mrs. Uriarte;

e. The motion to extend possession was denied on December 12, 2011, the order denying the motion to extend possession is attached as **Exhibit D**;

f. Allegedly provided Mr. and Mrs. Uriarte, with case updates consisting of transmitting information obtained for free and available at no cost to the public from the Circuit Court of Cook County's e-mail system on the following months:

    i.  October, 2010;

    ii.  December, 2010;

    iii.  April, 2011;

    iv.  August, 2011;

    v.  October, 2011;

    vi.  November, 2011;

    vii.  August, 2010;

    viii.  September, 2010;

    ix.  February, 2011;

    x.  March, 2011;

    xi.  July, 2011;

    xii.  December, 2011;

      xiii.   January, 2012; and

      xiv.   February, 2012.

Rendered no services for months other than those listed above.

23.        As a direct and proximate cause of Defendants' failure to act on behalf of Mr. and Mrs. Uriarte, a final judgment, an Order Confirming Sale and Possession, was entered, depriving Mr. and Mrs. Uriarte of legal title to their home and causing them to face eviction.

24.        At no time during the course of Defendants' representation of Mr. and Mrs. Uriarte, did any of the Defendants inform Mr. and Mrs. Uriarte of the following alternatives to the litigation or within the litigation:

      a.  Mediation;

      b.  Principal Reduction/Modification;

      c.  Debt Negotiation;

      d.  Sale of the Property/Short Sale; or

      e.  Reopening proceedings through a Motion to Vacate or similar motion.

25.    Defendants' failure to inform Mr. and Mrs. Uriarte of one or more of the foregoing alternatives to or within the litigation was an omission or failure to exercise reasonable care, skill and diligence as ordinarily possessed and exercised by other attorneys in the community for one or more of the following reasons:

      a.  It resulted in an improper limitation of scope of services without advising client of alternatives pursuant to the Illinois Rule of Professional Conduct 1.2;

      b.  It constituted failure to act as advisor and retain additional professionals as necessary to evaluate Plaintiffs, Mr. and Mrs. Uriartes' options, pursuant to Illinois Rule of Professional Conduct 2.1(4);

   c. It constituted failure to offer advice regarding alternate courses of action pursuant to Illinois Rule of Professional Conduct 2.1(5).

26. Defendants failure to do one or more of the following was a breach of Defendants' duty to exercise reasonable care, skill and diligence as attorneys:

   a. failure to act as advisor and retain additional professionals as necessary to evaluate Mr. and Mrs. Uriartes' options, pursuant to Illinois Rule of Professional Conduct 2.1(4);

   b. failure to offer advice regarding alternate courses of action pursuant to Illinois Rule of Professional Conduct 2.1(5).

27. None of the Defendants ever contacted the foreclosure plaintiff's law firm, Codilis & Associates, P.C. to inquire about a workout, loss mitigation, or loan modification.

28. None of the Defendants clearly explained to Mr. and Mrs. Uriarte the meaning of the entry of the Order Confirming Sale and Possession, namely that they could be evicted from their residence.

29. At all relevant times, Defendants intentionally and discriminatorily recruited clients on the basis of race and national origin, namely Hispanic people, by offering almost exclusively Spanish-language advertising, hosting fairs in Defendants' parking lot on holidays important to Hispanic people, stating in advertisements that it was important for Hispanic people to have someone represent them who understood Hispanic people, advertising in Hispanic-oriented venues, and using iconography geared toward Hispanic people and modified to convey a message that Defendants are fighting for the Hispanic community like their traditional heroes in advertising, including but not limited to the *luchador* whose mask is designed to portray the

scales of justice with the eyelets being the measuring cups with Defendants maintaining a stance similar to the *luchador*. **Exhibit E**.

30.     At all relevant times, Defendants charged a set monthly fee whether any service were rendered or what services were rendered and a late fee if payment was not made on time.

31.     As a direct and proximate result of the Defendants' breach of fiduciary duty, Mr. and Mrs. Uriarte sustained and incurred monetary damages and loss as follows:

       a.  loss of in equity in their home which could have been saved by following one or more of the alternatives to litigation set forth above;

       b.  attorney fees and late fees paid for months in where no services were rendered;

       c.  attorney fees and late fees paid in months where services were rendered but were incompetent;

       d.  appearance fee of $203.00 paid with a lack of meaningful representation; and

       e.  attorney fees and late fees for services that were merely provision of publically-available information disseminated at no cost to the public.

32.     The aforementioned monetary damages and loss would not have been sustained by Mr. and Mrs. Uriarte but for the Defendants' actions and inactions.

33.     As a result of Defendants' breach of duty to Mr. and Mrs. Uriarte, Mr. and Mrs. Uriarte were compelled to and did pay $203.00 in court costs.

34.     The damages sustained by Mr. and Mrs. Uriarte were proximately caused by the Defendants' breach of duty as hereinbefore set forth in detail without any negligence contributing thereto on the part of Mr. and Mrs. Uriarte.

35.     Solely by reason of the foregoing  actions and inactions of the Defendants,  Mr. and Mrs. Uriarte have been damaged in an amount to be determined at trial, plus the costs and disbursements of this suit herein, and attorney fees.

## CAUSES OF ACTION

36.     Mr. and Mrs. Uriarte bring each of the following causes of action individually and in the alternative as required by applicable facts or law.

### Count I – Fair Housing Act and Fair Housing Amendments Act – 42 U.S.C. §3601 *et seq.*)

37.     Mr. and Mrs. Uriarte incorporate each and every preceding paragraph stated above, inclusively, as though the same were fully set forth herein.

38.     The Fair Housing Act, 42 U.S.C. §3601 *et seq.*, (hereinafter the "Act") was first enacted in 1968 to prohibit discrimination in connection with real estate transactions, including home purchases and refinancing. The Act has been broadly construed by the courts to make effective its provisions to protect consumers. The Act includes national origin as a basis for illegal discrimination.

39.     Under 42 U.S.C. 3604(b), it is illegal to discriminate in services related to sales or rentals of dwellings. This is broadly construed to include services like mortgage loans and homeowners insurance. Under the same section, national origin is one of the protected classes. Under 42 U.S.C. 3604(c), it is illegal:

> To make, print, or publish, or cause to be made, printed, or published any notice, statement, or advertisement, with respect to the sale or rental of a dwelling that indicates any preference, limitation, or discrimination based on race, color, religion, sex, handicap, familial status, or national origin, or an intention to make any such preference, limitation, or discrimination.

Further, 42 U.S.C. 3605 prohibits discrimination by persons or other entities whose business includes engaging in residential real estate-related transactions.

40.     Defendants targeted Mr. and Mrs. Uriarte for inferior, substandard services because of their national origin. Defendants relied on their inability to speak English to prevent them from ascertaining the services were inferior, incompetent, and even non-existent.

41.     Defendants invidiously discriminated against Mr. and Mrs. Uriarte when Defendants told them Defendants were representing them in Court when, in fact, Defendants were not taking any actions reasonably calculated to save Mr. and Mrs. Uriartes' home, and Defendants relied upon their inability to speak English to prevent them from finding out Defendants were not representing them appropriately.

42.     In addition or in the alternative, Defendants engage in advertising in the "Hoy" newspaper, a Spanish-language newspaper with a circulation targeting Chicago's Spanish-speaking community. In this advertising, Defendants state that persons can live in their homes up to three years without making payments on their mortgage.

43.     As set forth above, Defendants advertise in Spanish, hold festivals geared toward holidays recognized by Spanish-speaking people in Defendants' parking lot, use advertising iconography designed to appeal to Spanish-speaking people, and even states in advertising that Spanish-speaking people need someone who "understands" them.

44.     By the actions described above, Defendants have violated 42 U.S.C. §§3601, 3604, and 3605.

45.     Mr. and Mrs. Uriarte were defendants in a foreclosure lawsuit where a competent attorney would have filed a Motion to Vacate, filed an Answer or other pleading, issued discovery, timely investigated personal jurisdiction, and taken other actions. A competent attorney would have  referred Mr. and Mrs. Uriarte to a HUD-Certified Housing Counseling Agency for free help with a loan modification application. Mr. and Mrs. Uriarte were entitled to

participate in the defense of their case with a competent attorney and similarly-situated foreclosure defendants whose national origin is the United States receive competent defense of their case.

46.     Mr. and Mrs. Uriarte fell prey to Defendants because of Defendants' Spanish-language advertising targeting people whose national origin is other than the United States.

47.     Defendants' discriminatory actions, as set forth above, have caused Mr. and Mrs. Uriarte to lose title to their residential home.

48.     Treating Mr. and Mrs. Uriarte differently in mortgage lending and  loan modification decisions based on their national origin violates the Fair Housing Act. As a proximate  result of Defendants' systematic violation of this Act, Mr. and Mrs. Uriarte are entitled to the relief requested herein.

        WHEREFORE, Plaintiffs, Mr. and Mrs. Uriarte, demand judgment against the Defendants, David Koch and Koch & Associates, Personal Corporation, for:

a.      Actual damages in a sum to be determined at trial;

b.      Return of all fees paid to Defendants for months wherein no services were rendered, approximately $3,840.00;

c.      The costs of the underlying mortgage foreclosure action born by Plaintiffs;

d.      The cost of the suit and attorneys fees incurred herein;

e.      Pain and suffering;

f.      Punitive damages; and

g.      For such other and further relief as this court may deem just and proper.

## COUNT II: VIOLATION OF THE CIVIL RIGHTS ACT OF 1866, 42 U. S. C. §§ 1981, 1982

49.     Mr. and Mrs. Uriarte restate and reallege the preceding paragraphs one through 35, 40 through 43, and 45 through 47.

50.     42 U. S. C. § 1982 provides, in pertinent part:

"All citizens of the United States shall have the same right, in every State and Territory, as is enjoyed by white citizens thereof to inherit, purchase, lease, sell, hold, and convey real and personal property."

51.     42 U. S. C. § 1981 provides, in pertinent part:

"(a) Statement of equal rights
"All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"(b) "Make and enforce contracts" defined
"For purposes of this section, the term "make and enforce contracts" includes the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship.

"(c) Protection against impairment
"The rights protected by this section are protected against impairment by nongovernmental discrimination and impairment under color of State law."

52.     As set forth more fully above, Defendants' actions denied Mr. and Mrs. Uriarte of their rights to hold real property based solely on their Ecuadorian race. Further, Defendants illegally offered Mr. and Mrs. Uriarte a contract that was different in its performance, making, and conditions from contracts offered to white citizens based solely on Mr. and Mrs. Uriartes' race.

WHEREFORE, Plaintiffs, Mr. and Mrs. Uriarte, demand judgment against the Defendants, David Koch and Koch and Associates, Personal Corporation, for:

a.     Actual damages in a sum to be determined at trial ;

b.     Return of all fees paid to Defendant for months wherein no services were rendered, approximately $3,840.00;

c.     The costs of the underlying mortgage foreclosure action born by Plaintiff;

d.      The cost of the suit and attorneys fees incurred herein;

e.      Pain and suffering;

f.      Punitive damages; and

g.      For such other and further relief as this court may deem just and proper.

## COUNT III: ATTORNEY MALPRACTICE

53.     Mr. and Mrs. Uriarte restate and reallege the preceding paragraphs one through 35, 40 through 43, and 45 through 47.as if set forth in full herein.

54.     Mr and Mrs. Uriarte are and were at all times relevant adults under no legal disability.

55.     Defendants at all relevant times owed Mr. and Mrs. Uriarte a duty of care arising from their attorney-client  relationship.

56.     Defendants breached that duty as set forth  more fully above.

57.     Mr. and Mrs. Uriarte suffered actual damages in the form of loss of all equity in their home, attorney fees expended for no meaningful representation, court costs incurred without meaningful participation in the case, mental anguish and medical costs, and expenditure of costs and fees for bringing this lawsuit.

58.     Mr. and Mrs. Uriartes' damages were directly and proximately caused by Defendants' breach.

WHEREFORE, Plaintiff, Mr. and Mrs. Uriarte, demand judgment against the Defendants, David Koch and Koch & Associates, Personal Corporation, for:

a.      Actual damages in a sum to be determined at trial ;

b.      Return of all fees paid to Defendant for months wherein no services were rendered, approximately $3,840.00;

c.      The costs of the underlying mortgage foreclosure action born by Plaintiffs;

d.    The cost of the suit and attorneys fees incurred herein;

e.    Pain and suffering; and

f.    For such other and further relief as this court may deem just and proper.

## COUNT IV: BREACH OF CONTRACT

59.    Mr. and Mrs. Uriarte restate and reallege the preceding paragraphs one through 35, 40 through 43, and 45 through 47.as if set forth in full herein.

60.    Mr. and Mrs. Uriarte are and were at all times relevant adults under no legal disability.

61.    Mr. and Mrs. Uriarte fully performed under the contract with Defendants, including payment of fees.

62.    Mr. and Mrs. Uriarte demanded  performance by Defendants, including through making visits to Defendants' office.

63.    Defendants failed to fulfill the retainer agreement by failing to meaningfully represent Mr. and Mrs. Uriarte in Court and by failing to contact the attorneys for the lender foreclosing on Mr. and Mrs. Uriartes' home to negotiate a loan modification or other settlement.

64.    This failure was a breach of the contract.

65.    As a proximate result of one or more of the aforementioned acts or omissions , that Plaintiffs suffered certain losses including $3,840.00 and attorneys fees to recover that money as well as all of the equity in their home.

WHEREFORE, Plaintiffs, Mr. and Mrs. Uriarte, demand judgment against the Defendants, David Koch and Koch & Associates, Personal Corporation, for:

a.    Actual damages in a sum to be determined at trial;

b.    Return of all fees paid to Defendant for months wherein no services were rendered, approximately $3,840.00;

c.      The costs of the underlying mortgage foreclosure action born by Plaintiffs;

d.      The cost of the suit incurred herein; and

e.      For such other and further relief as this court may deem just and proper.

## COUNT V: VIOLATION OF ILLINOIS CONSUMER FRAUD AND DECEPTIVE BUSINESS PRACTICES ACT: BUSINESS ADVERTISING OF SERVICES FREELY AVAILABLE TO THE GENERAL PUBLIC WITHOUT THE STATUTORILY REQUIRED DISCLOSURE

66.     The Illinois Consumer Fraud and Deceptive Business Practices Act (hereinafter "Illinois Fraud Act"), provides as follows:

> "b.      Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission of such material fact, or the use or employment of any practice described in Section 2 of the "Uniform Deceptive Trade Practices Act", approved August 5, 1965, in the conduct of any trade or commerce are hereby declared unlawful whether any person has in fact been misled, deceived or damaged thereby. In construing this section consideration shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to Section 5 (a) of the Federal Trade Commission Act. 815 ILCS 505/2.

> "c.      The terms "trade" and "commerce" mean the advertising, offering for sale, sale, or distribution of any services and any property, tangible or intangible, real, personal or mixed, and any other article, commodity, or thing of value wherever situated, and shall include any trade or commerce directly or indirectly affecting the people of this State. 815 ILCS 505/1(f)."

67.     Section 2 of the "Uniform Deceptive Trade Practices Act" provides as follows:

> " A person engages in a deceptive trade practice when, in the course of his or her business, vocation, or occupation, the person: . . .  advertises goods or services with intent not to sell them as advertised. 815 ILCS 510/2(a)(9).

68.     It is an unlawful practice for any person to offer for sale or sell to a consumer access to any records or copies of any records pertaining to the consumer that may be obtained at no cost or a nominal cost from a governmental agency or from any consumer reporting agency as defined in the federal Fair Credit Reporting Act unless all offers, solicitations, and applications

for any such service include the following statement in capital letters in not less than 10 point type: "MANY GOVERNMENT RECORDS ARE AVAILABLE FREE OR AT A NOMINAL COST FROM GOVERNMENT AGENCIES. CREDIT REPORTING AGENCIES ARE REQUIRED BY LAW TO GIVE YOU A COPY OF YOUR CREDIT RECORD UPON REQUEST, AT NO CHARGE OR FOR A NOMINAL FEE." 815 ILCS 505/2B.2

69.    Mr. and Mrs. Uriarte reallege the preceding paragraphs one through 35, 40 through 43, and 45 through 47.as if fully set forth herein.

70.    Defendants  engage in advertising in the "Hoy" newspaper.

71.    The "Hoy" newspaper is a Spanish-language newspaper with a circulation targeting Chicago's Spanish-speaking community.

72.    Defendants, in this advertising, state that persons can live in their homes up to three years without making payments on their mortgage.

73.    Defendants, in these advertisements, state that for $90.00 a month Defendants will provide updates and monitoring of the foreclosure proceedings without representation in court.

74.    Through placing this advertisement, Defendants necessarily hold out to the public that $90.00 is the fair market value of the monitoring and updating service.

75.    The abovementioned monitoring and updates involves Defendants obtaining information freely available to the public from the government, namely at www.cookcountyclerkofcourt.org.

76.    Defendants register the cases to be monitored with Defendant's e-mail address with the Cook County Clerk of Court's Web Page, a service offered by the governmental entity, Cook County Clerk of Court, to any person, whether attorney or non-attorney, at no cost.

77.    Defendants, after registering  their e-mail address, continue to receive updates automatically throughout the case.

78.     Defendants provide monitoring and updates in the form of telling the consumer what the received e-mails state.

79.     Defendants passively receive these e-mails.

80.     Any member of the public can register any e-mail account with any foreclosure case in the manner that Defendants register their e-mail with foreclosure cases for which monitoring and updating is offered.

81.     The abovementioned advertisements by Defendants for monitoring and updates do not inform the public that these records are available for free from government agencies.

82.     The monitoring and updates are not provided with any court representation contemplated because court representation is explicitly excluded in the advertisement.

83.     The monitoring and updates are not intended to be legal advice to the potential client, as information is merely given to the potential client as it is received by Defendants from the relevant government agency, and court representation is explicitly excluded in the advertisement.

84.     The advertisement is a publicly-disseminated version of a pattern and practice of business conducted at all times relevant to the events complained of in this complaint.

85.     Defendants intended for Mr. and Mrs. Uriarte to rely on Defendants to provide monitoring and updating of Plaintiffs' case.

86.     Mr. and Mrs. Uriarte purchased these monitoring and updating services in reliance on Defendants' advertising of these monitoring and updating services. An exemplar of the advertising at issue is attached as **Exhibit** E.

87.     These advertisements were placed in order to attract clients for business purposes separate and apart from any legal services rendered, as court representation is explicitly excluded in the advertisement.

88.    These monitoring and updating services are not legal services.

89.    These monitoring and updating services are clerical in nature at best.

90.    These monitoring and updating services do not require legal analysis.

91.    Defendants  intended to conceal the fact that these services are available to the general public for free.

92.    Defendants were aware that the disclosure to potential clients that these monitoring services are offered for free by the Clerk of the Circuit Court of Cook County would result in various potential clients not paying for these monitoring services.

93.    Mr. and Mrs. Uriarte paid Defendants $390 per month from September 2010 through January 2012.

94.    Mr. and Mrs. Uriarte  paid Defendants $300 per month from January,2012 through February 2012.

95.    Mr. and Mrs. Uriarte paid Defendants the aforementioned monthly fees for the following months when Defendants performed no work on  Mr. and Mrs. Uriartes', case:

        a.   November, 2010;

        b.   January, 2011;

        c.   May, 2011;

        d.   June, 2011; and

        e.   September, 2011.

96.    Mr. and Mrs. Uriarte paid Defendants the aforementioned monthly fees for the following months when Defendants performed no work on Mr. and Mrs. Uriartes' case besides the aforementioned monitoring and updating of the case, sending form letters to Mr. and Mrs. Uriarte without conducting substantive work on the case, or both:

    a.  August, 2010;

    b.  September, 2010;

    c.  February, 2011;

    d.  March, 2011;

    e.  July, 2011;

    f.  December, 2011;

    g.  January, 2012; and

    h.  February, 2012.

97.    Mr. and Mrs. Uriarte paid Defendants at least $3,840.00 for representation.

98.    Mr. and Mrs. Uriarte paid at least $1,710.00 to Defendants for monitoring and updating services during the course of Defendants' representation.

99.    Defendants did not include the statutorily-prescribed disclaimer in public advertising during all times relevant to this complaint.

100.    Defendants did not include the statutorily-prescribed disclaimer in the attorney-client retainer agreement during all times relevant to this complaint.

101.    Defendants did not include the statutorily-prescribed disclaimer in client communications regarding the monitoring and updating of the case during all times relevant to this complaint.

102.    Defendants' aforementioned conduct is a violation of the Illinois Fraud Act.

    WHEREFORE, Plaintiffs, Mr. and Mrs. Uriarte, respectfully requests this Court to enter a judgment against the Defendants', David Koch and Koch & Associates, Personal Corporation:

a.    Actual damages in a sum to be determined at trial;

b.    Return of all fees paid to Defendant for months wherein no services were rendered;

c.    Refund the approximately $1,710.00 paid in violation of the Illinois Fraud Act;

d.     The costs of the underlying mortgage foreclosure action born by Plaintiff;

e.     The cost of the suit incurred herein;

f.     Treble damages pursuant to the Illinois Consumer Fraud and Deceptive Business

Practices Act;

g.     For such other and further relief as this court may deem just and proper.

Respectfully submitted,


Beatriz and Bolivar Uriarte

/s/Kelli Dudley

By: _____

Kelli Dudley, Attorney for Plaintiffs, Bolivar and Beatriz Uriarte

Kelli Dudley, The Law Office of Kelli Dudley
9130 S. Houston Ave., 1st Floor
Chicago, IL 60617-4319
Ph: 312-771-9770 Email: attorneykelli@sbcglobal.net
ID #40828